PARIENTE, J., specially
concurring.
I concur in the adoption of this rule because I believe that the requirement of an evidentiary hearing and case management monitoring are two significant steps that will enhance the post-conviction process by literally cutting years off of the litigation of these claims without compromising the fairness of the process. We have also placed requirements on specificity in pleading. However, the ability of post-conviction counsel to file a detailed allegation of the factual basis for any claim for which an evidentiary hearing is sought and the ability of post-conviction counsel to be prepared for an evidentiary hearing to be held in a timely manner after the filing of the post-conviction motion will depend, in large part, on the timely disclosure of public records and the resolution of public records issues before the post-conviction motion is filed.
My major concern is whether we have provided realistic time limits for the trial court to hold an evidentiary hearing after the post-conviction motion has been filed. In this proposed rule an evidentiary hearing must be held no later than nine months after the State files its answer and as soon as seven months. When we had initially proposed this rule last April, we had envisioned a modified dual-track system where public records discovery would be ongoing during the time the case was on direct appeal. See Amendments to Florida Rules of Criminal Procedure 3.851, 3.852 and 3 .993, 112 So.2d 488, 491 (Fla.2000). As we stated at that time:
Our proposal will allow collateral counsel adequate time to evaluate all potential postconviction claims, including ineffective assistance of trial counsel, which oftentimes only become apparent after this Court’s decision on direct appeal. In addition, according to the statements of several attorneys and judges who appeared at oral argument, the requests for public records and the litigation that follows is the single biggest cause for delay in the current system. Under our proposed rules, the issue of public records should be resolved well before the postconviction motion is due to be filed in the circuit court.
Id. (emphasis supplied).
I acknowledge that in this proposed rule, we have slightly increased the time in which an evidentiary hearing must be held from our previous proposed 3.851 rule on which we have sought comment. However, because there will not be a period of years during which public records issues can be resolved, it is essential for our proposed system to work properly that the status conferences in the year between appointment of counsel and the filing of the post-conviction motion be productively used to resolve public records requests and that the State cooperates in making *1226 sure that all requests are timely complied with.
I lastly concur fully in Justice Anstead’s observations as to the essential ingredients for our post-conviction process to be expeditious without sacrificing fairness: 1) competent counsel; 2) reasonable time and adequate resources; 3) timely access to all information, especially public records, and 4) active and reasonable judicial oversight.
ANSTEAD, J., concurs.
APPENDIX A
Rule 3.851. Collateral Relief After Death Sentence Has Been Imposed And Affirmed on Direct Appeal
(a) Scope. This rule shall apply to all motions and petitions for any type of post-conviction or collateral relief brought by a prisoner in state custody who has been sentenced to death and whose conviction and death sentence have been affirmed on direct appeal. It shall apply to all post-conviction motions filed on or after October 1, 2001, Motions pending on that date are governed by the version of this rule in effect immediately prior to that date.
(b) Appointment of Postconviction Counsel.
(1) Upon the issuance of mandate affirming a judgment and sentence of death on direct appeal, the Supreme Court of Florida shall at the same time issue an order appointing the appropriate office of the Capital Collateral Regional Counsel.
(2) Within 30 days of the issuance of mandate, the Capital Collateral Regional Counsel shall file a notice of appearance in the trial court or a motion to withdraw based on a conflict of interest or some other legal ground.
(3) Within 15 days after Capital Collateral Regional Counsel files a motion to withdraw, the chief judge or assigned judge shall appoint new postconviction counsel.
(c)Preliminary Procedures.
(1) Judicial Assignment. Within 30 days of the issuance of mandate affirming a judgment and sentence of death on direct appeal, the chief judge shall assign the case to a judge qualified under the Rules of Judicial Administration to conduct capital proceedings.
(2) Status Conferences. The assigned judge shall conduct a status hearing not later than 90 days after the judicial assignment, and shall hold status conferences at least every 90 days thereafter until the evidentiary hearing has been completed or the motion has been ruled on without a hearing. The attorneys, with leave of the trial court, may appear by telephone at such status conferences. Such requests shall be liberally granted. Pending motions, disputes involving public records, or any other matters ordered by the court shall be heard at the status conferences.
(3) Prisoner’s Presence Not Required. The prisoner’s presence shall not be required at any hearing or conference held under this rule, except at the evidentiary hearing on the merits of any claim and at any hearing involving conflict with or removal of collateral counsel.
(4) Duties of Defense Counsel and Prosecuting Attorney. Within 45 days of appointment of postconviction counsel, the defendant’s trial counsel shall provide to postconviction counsel all information pertaining to the defendant’s capital case which was obtained during the representation of the defendant. Postconviction counsel shall maintain the confidentiality of all confidential information received. Within 45 days of appointment of postcon-viction counsel, the state attorney’s office that prosecuted the defendant shall provide to the postconviction counsel copies of *1227 all pretrial and trial discovery and all contents of the state’s file, except for information that the prosecuting attorney has a legal right under state or federal law to withhold from disclosure.
(fed) Time Limitation.
(1) Any rule 3.850 motion to vacate judgment of conviction and sentence of death shall be filed by the prisoner within 1 year after the judgment and sentence become final. For the purposes of this rule, a judgment is final:
(A) on the expiration of the time permitted to file in the United States Supreme Court a petition for writ of certiora-ri seeking review of the Supreme Court of Florida decision affirming a judgment and sentence of death (90 days after the opinion becomes final); or
(B) on the disposition of the petition for writ of certiorari by the United States Supreme Court, if filed.
(2) No motion shall be filed or considered pursuant to this rule if filed beyond the time limitation provided in subdivision (d)(1) unless it alleges that
(A) the facts on which the claim is predicated were unknown to the movant or the movant’s attorney and could not have been ascertained by the exercise of due diligence, or
(B) the fundamental constitutional right asserted was not established within the period provided for in subdivision (d)(1) and has been held to apply retroactively, or
(C) postconviction counsel, through neglect, failed to file the motion.
(23) All petitions for extraordinary relief in which the Supreme Court of Florida has original jurisdiction, including petitions for writ of habeas corpus, shall be filed simultaneously with the initial brief filed on behalf of the death-sentenced prisoner in the appeal of the circuit court’s order on the rule 3.850initial motion for postconviction relief filed under this rule.
(34) The time limitation in subdivision (ted)(l) is established with the understanding that each death-sentenced prisoner will have counsel assigned and available to begin addressing the prisoner’s postconviction issues within 30 days after the judgment and sentence become final. Should the governor sign a death warrant before the expiration of the time limitation in subdivision (bd)(l), the Supreme Court of Florida, on a defendant’s request, will grant a stay of execution to allow any postconviction relief motions to proceed in a timely and orderly manner. Furthermore, this time limitation shall not preclude the right to amend or to supplement pending pleadings under these rules.
(45) An extension of time may be granted by the Supreme Court of Florida for the filing of postconviction pleadings if the prisoner’s counsel makes a showing of good cause for counsel’s inability to file the postconviction pleadings within the 1 year period established by this rule.
(5) To the extent that they arenot-in-consistent with this rule,-the provisions of rule 3.850 remain applicable to postconviction or collateral relief.
(6) -This-rule-w411 govern the cases-of-all-death-sentenced prisoners whose — convictions and sentences become-final after January 1,1994.
(e) Contents of Motion.
(1) Initial Motion. A motion filed under this rule is an initial postconviction motion if no state court has previously ruled on a postconviction motion challenging the same judgment and sentence. An initial motion and memorandum of law filed under this rule shall not exceed 75 pages exclusive of the attachments. Attach *1228 ments shall include but are not limited to the judgment and sentence. The motion shall be under oath and shall include:
(A) a statement specifying the judgment and sentence under attack and the name of the court that rendered the same;
(B) a statement of each issue raised on appeal and the disposition thereof;
(C) the nature of the relief sought;
(D) a detailed allegation of the factual basis for any claim for which an evidentia-ry hearing is sought; and
(E) a detailed allegation as to the basis for any purely legal or constitutional claim for which an evidentiary hearing is not required and the reason that this claim could not have been or was not raised on direct appeal.
The memorandum of law shall set forth the applicable case law supporting the granting of relief as to each separately pled claim. As to claims that were raised on appeal or should have or could have been raised on appeal, the memorandum shall contain a brief statement as to why these claims are being raised on postcon-viction relief.
(2) Successive Motion. A motion filed under this rule is successive if a state court has previously ruled on a postconviction motion challenging the same judgment and sentence. A successive motion shall not exceed 25 pages, exclusive of attachments, and shall include:
(A) all of the pleading requirements of an initial motion under subdivision (e)(1);
(B) the disposition of all previous claims raised in postconviction proceedings and the reason or reasons the claim or claims raised in the present motion were not raised in the former motion or motions;
(C)if based upon newly discovered evidence, Brady v. Maryland, 373 U.S. 83[, 83 S.Ct. 1194, 10 L.Ed.2d 215] (1963), or Giglio v. United States, 405 U.S. 150[, 92 S.Ct. 763, 31 L.Ed.2d 104] (1972), the following:
(i) the names, addresses, and telephone numbers of all witnesses supporting the claim;
(ii) a statement that the witness will be available, should an evidentiary hearing be scheduled, to testify under oath to the facts alleged in the motion or affidavit;
(iii) if evidentiary support is in the form of documents, copies of all documents shall be attached, including any affidavits obtained; and
(iv) as to any witness or document listed in the motion or attachment to the motion, a statement of the reason why the witness or document was not previously available.
(ef) Hearing Requirement, Before ruling on any rule -3;850--motion-filed by a death-sentenced — prisoner,, the trial court shall — conduct—a hearing to — determine whether an evidentiary hearing is re-quiredrProcedure; Evidentiary Hearing; Disposition.
(1) Filing and Service. All pleadings in the postconviction proceeding shall be filed with the clerk of the trial court and served on the assigned judge, opposing party, and the attorney general. Upon the filing of any original court paper in the postconviction proceeding, the clerk of the trial court shall determine that the assigned judge has received a copy. All motions other than the postconviction motion itself shall be accompanied by a notice of hearing.
(2) Duty of Clerk. Upon the filing of a motion for postconviction relief, the clerk *1229 of the trial court shall immediately forward the motion and file to the assigned judge.
(3) Answer.
(A) To Initial Motion. Within 60 days of the filing of an initial motion, the state shall file its answer. The answer and accompanying memorandum of law shall not exceed 75 pages, exclusive of attachments and exhibits. The answer shall address the legal insufficiency of any claim in the motion, respond to the allegations of the motion, and address any procedural bars. As to any claims of legal insufficiency or procedural bar, the state shall include a short statement of any applicable case law.
(B) To Successive Motion. Within 10 days of the filing of a successive motion, the state shall file its answer. The answer shall not exceed 25 pages, exclusive of attachments and exhibits. The answer shall specifically respond to each claim in the motion and state the reason(s) that an evidentiary hearing is or is not required.
(4) Amendments. A motion filed under this rule may be amended up to 30 days prior to the evidentiary hearing upon motion and good cause shown. The trial court may in its discretion grant a motion to amend provided that the motion sets forth the reason the claim was not raised earlier and attaches a copy of the claim sought to be added. Granting a motion under this subdivision shall not be a basis for granting a continuance of the eviden-tiary hearing unless a manifest injustice would occur if a continuance was not granted. If amendment is allowed, the state shall file an amended answer within 20 days after the amended motion is filed.
(5) Case Management Conference; Evidentiary Hearing.
(A) Initial Postconviction Motion. No later than 90 days after the state files its answer to an initial motion, the trial court shall hold a case management conference. At the case management conference, both parties shall disclose all documentary exhibits they intend to offer at the evidentiary hearing, provide an exhibit list that includes all such exhibits, and exchange a witness list with the names and addresses of any potential witnesses. All expert witnesses shall be so designated with copies of all expert reports attached. At the case management conference, the trial court shall:
(i) schedule an evidentiary hearing, to be held within 90 days, on claims listed by the defendant as requiring a factual determination; and
(ii) hear argument on any purely legal claims not based on disputed facts.
(B) Successive Postconviction Motion. Within 30 days after the state files its answer to a successive motion for post-conviction relief, the trial court shall hold a case management conference. At the case management conference, the trial court also shall determine whether an evidentia-ry hearing should be held and hear argument on any purely legal claims not based on disputed facts. If the motion, files, and records in the case conclusively show that the movant is entitled to no relief, the motion may be denied without an eviden-tiary hearing. If the trial court determines that an evidentiary hearing should be held, the court shall schedule the hearing to be held within 60 days. If a death warrant has been signed, the trial court shall expedite these time periods in accordance with subdivision (h) of this rule.
(C) Extension of Time to Hold Evi-dentiary Hearing. The trial court also may for good cause extend the time for holding an evidentiary hearing for up to 90 days.
*1230 (D) Procedures After Evidentiary Hearing. Immediately following an evi-dentiary hearing, the trial court shall order a transcript of the hearing which shall be filed within 30 days. Within 30 days of receipt of the transcript, the court shall render its order, ruling on each claim considered at the evidentiary hearing and all other claims raised in the motion, making detailed findings of fact and conclusions of law with respect to each claim, and attaching or referencing such portions of the record as are necessary to allow for meaningful appellate review. The order issued after the evidentiary hearing shall resolve all the claims raised in the motion and shall be considered the final order for purposes of appeal. The clerk of the trial court shall promptly serve upon the parties and the attorney general a copy of the final order, with a certificate of service.
(5) Mental Health Expert. If the defendant intends to offer expert testimony of his or her mental status, the state shall be entitled to have the defendant examined by its own mental health expert. If the defendant fails to cooperate with the state’s expert, the trial court may, in its discretion, proceed as provided in rule 3.202(e). Reports provided to either party by an expert witness shall be disclosed to opposing counsel upon receipt.
(6) Rehearing. Motions for rehearing shall be filed within 15 days of the rendition of the trial court’s order and a response thereto filed within 10 days thereafter. The trial court’s order disposing of the motion for rehearing shall be rendered not later than 15 days thereafter.
(dg) Incompetence to Proceed in Capital Collateral Proceedings.
(1)A death-sentenced prisoner pursuing collateral relief under this rule 3.850 or rule 3.851 who is found by the court to be mentally incompetent shall not be proceeded against, subjec-t — fo-the—limitations in subdivision -(d)(3)TÍf there are factual matters at issue, the development or resolution of which require the prisoner’s input. However,Aa 11 collateral relief issues that involve only matters of record and claims that do not require the prisoner’s input shall proceed in collateral proceedings notwithstanding the prisoner’s incompetency.
(2) Collateral counsel may file a motion for competency determination and an accompanying certificate of counsel that the motion is made in good faith and on reasonable grounds to believe that the death-sentenced prisoner is incompetent to proceed. The motion and certificate shall replace the signed oath by the prisoner that otherwise must accompany a rule-3.850 motion filed under this rule.
(3) If, at any stage of a postconviction proceeding, the court determines that there are reasonable grounds to believe that a death-sentenced prisoner is incompetent to proceed and that factual matters are at issue, the development or resolution of which require the prisoner’s input, a judicial determination of incompetency is required.
(4) The motion for competency examination shall be in writing and shall allege with specificity the factual matters at issue and the reason that competent consultation with the prisoner is necessary with respect to each factual matter specified. To the extent that it does not invade the lawyer-client privilege with collateral counsel, the motion shall contain a recital of the specific observations of, and conversations with, the death-sentenced prisoner that have formed the basis of the motion.
(5) If the court finds that there are reasonable grounds to believe that a death-sentenced prisoner is incompetent to proceed in a postconviction proceeding in which factual matters are at issue, the *1231 development or resolution of which require the prisoner’s input, the court shall order the prisoner examined by no more than 3, nor fewer than 2, experts before setting the matter for a hearing. The court may seek input from the death-sentenced prisoner’s counsel and the state attorney before appointment of the experts.
(6) The order appointing experts shall:
(A) identify the purpose of the evaluation and specify the area of inquiry that should be addressed;
(B) specify the legal criteria to be applied; and
(C) specify the date by which the report shall be submitted and to whom it shall be submitted.
(7) Counsel for both the death-sentenced prisoner and the state may be present at the examination, which shall be conducted at a date and time convenient for all parties and the Department of Corrections.
(8) On appointment by the court, the experts shall examine the death-sentenced prisoner with respect to the issue of competence to proceed, as specified by the court in its order appointing the experts to evaluate the prisoner, and shall evaluate the prisoner as ordered.
(A) The experts first shall consider factors related to the issue of whether the death-sentenced prisoner meets the criteria for competence to proceed, that is, whether the prisoner has sufficient present ability to consult with counsel with a reasonable degree of rational understanding and whether the prisoner has a rational as well as factual understanding of the pending collateral proceedings.
(B) In considering the issue of competence to proceed, the experts shall consider and include in their report:
(i) the prisoner’s capacity to understand the adversary nature of the legal process and the collateral proceedings;
(ii) the prisoner’s ability to disclose to collateral counsel facts pertinent to the postconviction proceeding at issue; and
(iii) any other factors considered relevant by the experts and the court as specified in the order appointing the experts.
(C)Any written report submitted by an expert shall:
(i) identify the specific matters referred for evaluation;
(ii) describe the evaluative procedures, techniques, and tests used in the examination and the purpose or purposes for each;
(iii) state the expert’s clinical observations, findings, and opinions on each issue referred by the court for evaluation, and indicate specifically those issues, if any, on which the expert could not give an opinion; and
(iv) identify the sources of information used by the expert and present the factual basis for the expert’s clinical findings and opinions.
(9)If the experts find that the death-sentenced prisoner is incompetent to proceed, the experts shall report on any recommended treatment for the prisoner to attain competence to proceed. In considering the issues relating to treatment, the experts shall report on:
(A) the mental illness or mental retardation causing the incompetence;
(B) the treatment or treatments appropriate for the mental illness or mental retardation of the prisoner and an explanation of each of the possible treatment alternatives in order of choices; and
*1232 (C) the likelihood of the prisoner attaining competence under the treatment recommended, an assessment of the probable duration of the treatment required to restore competence, and the probability that the prisoner will attain competence to proceed in the foreseeable future.
(10) Within 30 days after the experts have completed their examinations of the death-sentenced prisoner, the court shall schedule a hearing on the issue of the prisoner’s competence to proceed.
(11) If, after a hearing, the court finds the prisoner competent to proceed, or, after having found the prisoner incompetent, finds that competency has been restored, the court shall enter its order so finding and shall proceed with a postconviction motion. The prisoner shall have 60 days to amend his or her rule 3^8563.850 motion only as to those issues that the court found required factual consultation with counsel.
(12) If the court does not find the prisoner incompetent, the order shall contain:
(A) findings of fact relating to the issues of competency;
(B) copies of the reports of the examining experts; and
(C) copies of any other psychiatric, psychological, or social work reports submitted to the court relative to the mental state of the death-sentenced prisoner.
(13) If the court finds the prisoner incompetent or finds the prisoner competent subject to the continuation of appropriate treatment, the court shall follow the procedures set forth in rule 3.212(c), except that, to the extent practicable, any treatment shall take place at a custodial facility under the direct supervision of the Department of Corrections.
(eh) After Death Warrant Signed.
The time periods provided for under this rule shall be expedited after a death warrant has been signed.
Court Commentary
1993 Adoption. This rule is consistent with the recommendation of the Supreme Court Committee on Postconviction Relief in Capital Cases, which was created because of the substantial delays in the death penalty postconviction relief process. The committee was created because of the inability of the capital collateral representative to properly represent all death penalty inmates in postconviction relief eases and because of the resulting substantial delays in those cases. That committee recognized that, to make the process work properly, each death row prisoner should have counsel available to represent him or her in postconviction relief proceedings. The committee found that one of the major problems with the process was that the triggering mechanism to start or assure movement of the postconviction relief proceedings was the signing of a death warrant. In a number of instances, the courts were not aware of the problems concerning representation of a defendant until a death warrant was signed. In other instances, the committee found that, when postconviction relief motions had been filed, they clearly had not moved at an orderly pace and the signing of a death warrant was being used as a means to expedite the process. The committee recommended that specific named counsel should be designated to represent each prisoner not later than 30 days after the defendant’s judgment and sentence of death becomes final. To assure that representation, the committee’s report noted that it was essential that there be adequate funding of the capital collateral representative and sought temporary assistance from The Florida Bar in providing pro bono representation for some inmates.
*1233 There is a justification for the reduction of the time period for a capital prisoner as distinguished from a noncapital prisoner, who has two years to file a postconviction relief proceeding. A capital prisoner will have counsel immediately available to represent him or her in a postconviction relief proceeding, while counsel is not provided or constitutionally required for noncapital defendants to whom the two-year period applies.
In the event the capital collateral representative is not fully funded and available to provide proper representation for all death penalty defendants, the reduction in the time period would not be justified and would necessarily have to be repealed, and this Court will forthwith entertain a petition for the repeal of the rule. In this context, it is important to emphasize that the governor agrees that absent the circumstance where a competent death-sentenced individual voluntarily requests that a death warrant be signed, no death warrants will be issued during the initial round of federal and state review, provided that counsel for death penalty defendants is proceeding in a timely and diligent manner. This Court agrees that the initial round of postconviction proceedings should proceed in a deliberate but timely manner without the pressure of a pending death warrant. Subdivision 3.851(b)(4) above addresses concerns of The Florida Bar and The Florida Bar Foundation.
The provisions of the present rule 3.851 providing for time periods where a 60 day warrant is signed by the governor are abolished because they are unnecessary if the guidelines are followed. The proceedings and grounds for postconviction relief remain as provided under Florida Rule of Criminal Procedure 3.850, which include, as one of the grounds, the opportunity for a defendant to present newly discovered evidence in accordance with Scott v. Dugger, 604 So.2d 465 (Fla.1992), Jones v. State, 591 So.2d 911 (Fla.1991), and Richardson v. State, 546 So.2d 1037 (Fla.1989).
1996 Amendment. Subdivision (c) is added to make the Court’s decision in Huff v. State, 622 So.2d 982 (Fla.1993), applicable to all rule 3.850 motions filed by a prisoner who has been sentenced to death. Florida Rule of Judicial Administration 2.071(b) allows for telephonic and teleconferencing communication equipment to be utilized “for a motion hearing, pretrial conference, or a status conference.” Teleconferencing sites have been established by the Department of Management Services, Division of Communications at various metropolitan locations in the state. The “Shevin Study” examined, at this Court’s request, the issue of delays in capital post-conviction relief proceedings and noted that travel problems of counsel cause part of those delays. The Court strongly encourages the use of the new telephonic and teleconferencing technology for postconviction relief proceedings that do not require evidentiary hearings, such as the hearing required under subdivision (c) of this rule. Only the attorneys need be involved in a hearing held under subdivision (c) of this rule; attendance of the postconviction defendant is not required.
2001 Amendment. Several new procedures are added to rule 3.851. New subdivision (b), Appointment of Postconviction Counsel, is added to ensure appointment of postconviction counsel upon the Supreme Court of Florida’s issuance of mandate on direct appeal. New subdivision (c), Preliminary Procedures, provides for, among other things, the assignment of a qualified judge within 30 days after mandate issues on direct appeal and status conferences every 90 days after the assignment until the evidentiary hearing has been completed or the motion has been ruled on without *1234 a hearing. These status conferences are intended to provide a forum for the timely resolution of public records issues and other preliminary matters. New subdivision (f), Procedure; Evidentiary Hearing; Disposition, sets forth general procedures. Most significantly, that subdivision requires an evidentiary hearing on claims listed in an initial motion as requiring a factual determination. The Court has identified the failure to hold evidentiary hearings on initial motions as a major cause of delay in the capital postconviction process and has determined that, in most cases, requiring an evidentiary hearing on initial motions presenting factually based claims will avoid this cause of delay. See Amendments to Florida Rules of Criminal Procedure S.851, 3.852 and S.998, 772 So.2d 488, 491 (Fla.2000).
APPENDIX R
Rule 2.050. Trial Court Administration
(a) (No Change)
(b) Chief Judge.
(1) (No Change)
(2) (No Change)
(3) (No Change)
(4) The chief judge shall assign judges to the courts and divisions, and shall determine the length of each assignment. All judges shall inform the chief judge of any contemplated absences that will affect the progress of the court’s business. If a judge is temporarily absent, is disqualified in an action, or is unable to perform the duties of the office, the chief judge or the chief judge’s designee may assign a proceeding pending before the judge to any other judge or any additional assigned judge of the same court. The chief judge may assign any judge to temporary service for which the judge is qualified in any court in the same circuit. If it appears to the chief judge that the speedy, efficient, and proper administration of justice so requires, the chief judge shall request the chief justice of the supreme court to assign temporarily an additional judge or judges from outside the circuit to duty in the court requiring assistance, and shall advise the chief justice whether or not the approval of the chief judge of the circuit from which the assignment is to be made has been obtained. The assigned judges shall be subject to administrative supervision of the chief judge for all purposes of this rule. When assigning a judge to hear any type of postconviction or collateral relief proceeding brought by a defendant who has been sentenced to death, the chief judge shall assign to such cases the judge who presided over the original proceeding if that judge is active or otherwise available to serve unless otherwise directed by the supreme courta judge qualified to conduct such proceedings under subdivision (b)(10) of this rule. Nothing in this rule shall restrict the constitutional powers of the chief justice of the supreme court to make such assignments as the chief justice shall deem appropriate.
(5) (No Change)
(6) (No Change)
(7) (No Change)
(8) (No Change)
(9) (No Change)
(10) (No Change)
(c) (No Change)
(d) (No Change)
(e) (No Change)
(D (No Change)
*1235 (g) (No Change)
(h) (No Change)